UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

EDWARD SHEDLOCK,                    )
      Plaintiff,                    )
                                   )
      vs.                    )          1:09-cv-0627-LJM-TAB
                                   )
VISTEON CORPORATION,                    )
      Defendant.                    )

## ORDER ON SUMMARY JUDGMENT

This matter comes before the Court on Defendant's, Visteon Corporation ("Visteon"), Motion for Summary Judgment [dkt. no. 53] on Plaintiff's, Edward Shedlock ("Shedlock"), claims brought under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").  Shedlock failed to respond to Visteon's Motion for Summary Judgment within the deadline set out by the Court after granting multiple extensions.  The court rules on the unopposed motion as follows.

## I.  BACKGROUND

Visteon is an automotive systems, modules, and components supplier.  Manley Decl. at ¶ 3.  Visteon operates a network of manufacturing sites, technical centers, sales offices and joint ventures located all over the world.  *Id.*

During the relevant time period, Visteon contracted with several third-party companies including payroll-administrator, Fidelity, and benefits administrator, Towers-Perrin, for salaried and hourly employees, including those at Visteon's facility located in Saline, Michigan.  Metzigian Decl. at ¶ 3.  As benefits administrator, Towers-Perrin was

responsible for providing information on COBRA qualifying events to Visteon's COBRA administrator, Conexis Benefits Administrators ("Conexis").  *Id.*  Communication between the two entities regarding qualifying events was automatic, and any change that affected an employee's benefits or employment status was systematically transmitted by Visteon's Fidelity to Towers-Perrin, who in turn was responsible for transmitting an electronic file to Conexis for the purpose of providing notifications to employees.  *Id.*

Since June 2000, Visteon has conducted data interface testing during the implementation of any third-party vendor in which dada is automatically and systematically transmitted.  Metzigian Decl. at ¶¶ 4-5.  The testing procedures are meant to ensure that all data properly transmits to and from all interfaced vendors and include testing to ensure that the necessary data interfaces affecting COBRA notification were satisfactory.  Metzigian Decl. at ¶ 4.  Towers-Perrin and Conexis, the applicable vendors providing services to Visteon's Saline, Michigan facility, satisfactorily completed these procedures prior to commencing their administrative services.  Metzigian Decl. at ¶¶ 3, 5.

Visteon offered group health plans to active employees that included medical, dental, and vision coverage.  Manley Decl. at ¶ 6.  These benefits were "bundled," which meant that the payment of all employee premium contributions was required in order to maintain benefits.  Manley Decl. at ¶ 7.  An employee's failure to pay the required contribution for any type of benefit would result in the termination of all three types of coverage in their entirety.  *Id.*

During periods of unpaid leave, Visteon employees were billed directly for the employee portion of the insurance premiums associated with the benefits in which they were enrolled.  *Id.*  The employees were then required to timely remit payments for their

2

contribution of the premiums in order to maintain coverage.  *Id.*  In the event that an employee on unpaid leave failed to pay all, or a portion of the premiums for bundled benefits in a given coverage period, the employee's benefits under Visteon's group health plans would terminate in their entirety due to non-payment.  Manley Decl. at ¶ 8.

In September 2001, Visteon hired Shedlock as a supervisor in its Saline, Michigan facility.  Shedlock Dep. at 21-22, 25-26.  On August 23, 2005, Shedlock requested a leave of absence.  Shedlock Dep. at 36-43.  Visteon granted Shedlock's request and placed him on unpaid leave with an expected return date of November 30, 2005.  Manley Decl. at ¶ 10.

While Shedlock was on leave, Conexis mailed monthly insurance premium invoices to his home.  Folks Decl. at ¶ 7.  Shedlock did not pay any invoices sent to him after November 18, 2005.  Folks Decl. at ¶ 11.  On February 7, 2006, as a result of Shedlock's non-payment, Conexis cancelled Shedlock's insurance coverage effective December 31, 2005, the expiration date of the last period for which he had submitted payment.  Folks Decl. at ¶ 12.

Shedlock did not return to work on November 30, 2005, his expected return to work date.  Manley Decl. at ¶ 12.  On December 1, 2005, Visteon sent a letter by certified mail to Shedlock's home address stating that if he did not return to work in five days, the company would interpret it as an expression of his intent to quit.  Manley Dec. at ¶ 13.  Shedlock failed to respond to the letter and did not return Visteon's phone calls.  *Id.*  On December 9, 2005, Visteon terminated Shedlock's employment.  Manley Decl. at ¶ 14.  Visteon informed Shedlock of its decision to terminate his employment through a letter sent

to his home address on December 15, 2005.  *Id.*  On January 12, 2006, Shedlock learned

of his termination.  Shedlock Dep. at 62.

## II. <u>STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural

shortcut, but rather is an integral part of the federal rules as a whole, which are designed

to secure the just, speedy, and inexpensive determination of every action.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers*

*v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990).  Motions for summary

judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in

relevant part:

> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to
> judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing

party may not simply rest upon the pleadings but must instead submit evidentiary materials

showing that a fact either is or cannot be genuinely disputed.  Fed. R. Civ. P. 56(c)(1).  A

genuine issue of material fact exists whenever "there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating

that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992,

997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence

to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

COBRA requires administrators of group health plans to provide the option of purchasing continued health care coverage to employees and their qualified beneficiaries

5

who would otherwise lose coverage as a result of a "qualifying event." 29 U.S.C. § 1161. The plan administrator must then notify the former employee of his or her right to receive continuation coverage within forty-four days of the former employee's qualifying event. 29 U.S.C. § 1166(a)(4)(A). If the administrator fails to provide the required COBRA notice within forty-four days of the qualifying event, the administrator may, in the Court's discretion be liable for a per diem penalty of up to $110 "from the date of such failure or refusal," as well as "such other relief" as the Court deems proper. 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1.

COBRA explicitly defines the term "qualifying event" as "events which, but for the continuation coverage required . . . would result in the loss of coverage of a qualified beneficiary." 29 U.S.C. § 1163. COBRA goes on to list the six events that meet the definition: (1) the death of the covered employee; (2) the termination of the covered employee's employment; (3) the divorce/legal separation of the covered employee from his or her spouse; (4) the covered employee becoming entitled to Medicare benefits; (5) a covered employee's child ceasing to be a dependent; and (6) a proceeding in bankruptcy that affects covered retirees. 29 U.S.C. §§ 1163(1)-(6). The evidence shows that Shedlock's coverage was lost because he failed to pay the insurance premium invoices Conexis mailed to him. Indeed, through Conexis, Visteon continued to offer Shedlock coverage even after the date of his termination in January and February 2006, but he failed to pay his portion of the premiums. Folks Decl. at ¶¶ 9-11. Shedlock's group coverage did not cease because of his termination, instead it ended because he failed to pay his premiums. Therefore, Shedlock's termination does not constitute a qualifying event for the purposes of COBRA. *See Karp v. Guardian Life Ins. Co. of Am.* 456 F. Supp. 2d 1375,

6

1381 (S.D. Ga. 2006) (stating that when termination is not the cause of the loss of medical benefits, termination is not a qualifying event under COBRA); *Mansfield v. Chi. Park Dist. Grp. Plan*, 997 F. Supp. 1053, 1057 (N.D. Ill 1998) (Williams, J.) (stating that termination is not a qualifying event when the same medical coverage continued automatically after termination).  Accordingly, Shedlock was not entitled to COBRA notice as a matter of law. *See* 29 U.S.C. § 1161.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Visteon's Motion for Summary Judgment is **GRANTED** [dkt. no. 53].  Plaintiff shall take nothing by way of his complaint.  The only issues remaining in the litigation are Visteon's counterclaims, which sound in state law.  The Court **ORDERS** Defendants to **SHOW CAUSE** within thirty days of the date of this Order why the Court should not remand its counterclaims to state court.

IT IS SO ORDERED this 16th day of July, 2012.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:

Hannesson Ignatius Murphy
BARNES & THORNBURG LLP
hmurphy@btlaw.com

Robert Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com

Ronald E. Weldy
WELDY & ASSOCIATES
weldy@weldylaw.com